ALVIN HAYNES V. THE STATE.

1. It is the duty of the district judge, on the trial of a criminal charge, to so frame his instructions that they shall have a direct application to the facts in evidence.
2. See this case for evidence which, considered with reference to the instructions of the court, was held not sufficient to justify a verdict of guilty.

APPEAL from Caldwell. Tried below before the Hon. Henry Maney.

In this case four instructions were given to the jury, on the trial, by the presiding judge. The first was a copy from the Penal Code of the definition of theft. The second defined who were principals in the commission of an offense, and was also copied *verbatim* from the code. The third and fourth were as follows:

"3. If you believe from the evidence that the defendant is guilty of the offense charged against him, you will say so, and assess his punishment at confinement in the penitentiary not less than two nor more than five years.

"4. If you have any reasonable doubt of the guilt of the defendant, such as fairly presents itself from the evidence which you believe to be true, you will acquit him."

Verdict of guilty, and punishment assessed at two years in the penitentiary. Motion for new trial overruled,

and final judgment entered on the verdict, from which Haynes appealed.

*James H. Burts*, for appellant.

*Geo. Clark, Attorney-General*, for the State.

ROBERTS, CHIEF JUSTICE.—This is a prosecution under an indictment against Alvin Haynes for the theft of a red heifer of the value of eight dollars, "of the species of neat cattle," in terms conformable to the general law of theft, in Article 2381, 1 Paschal's Digest. The charge embraced two others, Cabiness and Wilson. Defendant Haynes, having severed, was alone tried, and found guilty by the jury, who assessed his punishment at two years confinement in the penitentiary.

The evidence tended to show that Cabiness stole the heifer, put her in the butcher pen of Haynes & Page, one-half a mile from the market house in the town of Lockhart, where Haynes & Page sold beef. The evidence that Cabiness stole the heifer was mainly that the brand on the animal was not exactly like that on the stock of Montgomery that he was authorized to sell, being "S S" instead of "5 5," and the further fact that after putting her in the pen alone he cut her ears, putting them in Montgomery's mark, so that shortly afterwards they were seen to be bloody. The only facts proved tending to implicate Haynes in the theft in any way whatever were, that on the same day the heifer was put in the pen, and perhaps shortly after that event, Haynes was at the pen, and with Cabiness and Wilson killed and skinned the heifer, had the beef hauled in a cart to the market in town, and the hide, with another hide that was put in a box in the cart, sent to Lane, the inspector, without being taken out of the box at the market, with the message that Cabiness had put the animal, from which the pale-red hide was taken, in the pen. It was also proved that Hudspeth,

the cart driver, brought back from Lane to Haynes $5.25 for the two hides, and that afterwards Cabiness demanded from Page, the partner of Haynes, the price of the pale-red heifer.

The charge of the court embraced the definitions of theft, and of a principal in an offense, in the language of the two articles of the code, 2381 and 1810, and also the law as to doubts, and as to the proper punishment, if found guilty.

There was no charge given having a direct application to the facts of the case. The whole of it would have applied about as well to one case of theft, where there were three defendants, as to another.

The defendant made a motion for a new trial, and, among other grounds not sufficiently important to require notice, set up that—

1. The verdict of the jury was contrary to law and the evidence.

4. Surprise at the mistaken impression of his own witness, Edgar Page.

7. And being deprived of the testimony of his co-defendant Wilson.

It is quite certain that Haynes did not expect Edgar Page to swear as he did, being introduced as his own witness. There can be no reason seen from the evidence why Wilson was included in this prosecution, unless, as it is to be feared is too often the case, it was to exclude Haynes from the benefit of his evidence. These two grounds severally may be weak or strong in support of a motion for a new trial, according to the nature of the case and the attendant circumstances. Combined together they deserve serious consideration, in aid of the more substantial objection to the verdict as being contrary to law and the evidence, in deciding whether or not the motion for a new trial should be granted.

The central fact in the evidence, upon which Haynes'

conviction was based, was that he was at the pen when the heifer was killed, and that he helped skin her. This fact was established by the positive testimony of one witness for the State, Hudspeth, the cart driver, and the best impression of Edgar Page, a small boy, but contradicted by the positive testimony of Mrs. L. B. Page, who lived near the pen, and was at it.

Upon Haynes' conviction, before the motion for a new trial was made, a *nole prosequi* was entered against Wilson, he being one of the persons, as agreed by all the witnesses, who was at the pen and helped skin the heifer. Wilson's affidavit was offered in support of said motion, to the effect that Haynes was not present at the pen, and never saw the heifer until the beef was brought to the market, and did not examine the hide. Edgar Page made an affidavit in support of said motion, stating that when examined he was confused, and then swore as he then believed, but that since that time he is satisfied that he was mistaken in his impression as to Haynes being at the pen on that day, but that it was the day previous.

The court overruled the motion for a new trial as asked by the defendant, and he gave notice of appeal to the Supreme Court.

That Cabiness stole the heifer, does not appear to be certain from the evidence, however probable it may be, if he is known to be suspected of such practices. But if that be admitted, there was no evidence of a previous arrangement between him and Haynes, that Haynes would aid him in a joint appropriation of the property to their own use, after it should be driven up and put in the slaughter pen of Haynes & Page. There being no previous arrangement, if Haynes was at the pen, and thereby could certainly know that it was stolen property, placed in his possession to be paid for as stolen property, then Haynes might have been prosecuted only as a receiver of stolen property. (1 Paschal's Digest, Arts. 2382–3–4, etc.)

Suppose it to be admitted that Haynes was at the pen and helped to skin the animal, which was rendered very uncertain by the affidavits of Page and Wilson, by what process of deduction from that solitary fact against Haynes could his guilt as charged be arrived at to a moral certainty? First, it must be presumed that, as he helped to skin the animal, he must have seen that its ears were bloody, there being no evidence that this fact was mentioned by any one then present. Secondly, as he saw that her ears were bloody by having been freshly marked, it must be presumed that he thereby knew that Cabiness had stolen the heifer and re-marked her to prevent detection. And upon these two presumptions, piled one upon the other, resting upon an uncertain fact, it must be further concluded, upon the supposition of his guilt, that he joined Cabiness in the appropriation of the property, thereby aiding in the theft, with a reckless disregard of his safety and that of Cabiness, as manifested by his sending the hide, with bloody, freshly-marked ears, to the inspector. It was the duty of the inspector to detect thefts of live stock; and yet the hide was accompanied with a message sent by the cart-driver, that this hide was from an animal put in his butcher pen by Cabiness, which, with the attendant circumstances, plainly implied that the animal had been slaughtered and sold by him in the market.

The isolated fact, then, upon which his guilt could possibly be conjectured was established by conflicting evidence, was weak in itself, and was overwhelmed by opposing circumstances connected with it; and the charge being general, the jury were left to their own views of the law as applicable to the particular facts of the case, and found such a verdict as we do not think can be sustained by law and the evidence as the record presents the case to this court. Therefore the judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.